**Opinion issued July 2, 2026**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-24-00987-CV

_____

**MARIA SANCHEZ, Appellant**

**V.**

**YSIDRO HERNANDEZ, Appellee**

**On Appeal from the 309th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-72513**

## MEMORANDUM OPINION

Appellant Maria Sanchez appeals from the trial court's final decree of divorce involving the characterization and division of property in her divorce from Appellee Ysidro Hernandez. After a two-day trial, a jury returned a verdict finding that the parties' residence in Houston, Texas was community property, that certain

properties used in connection with a bail bond business were not community property, and that Sanchez did not commit fraud against the community estate by transferring the bail bond properties to her adult son. Over a year later, the trial court entered a final decree of divorce declaring that the bail bond properties are the separate property of the parties with each owning a fifty percent interest as tenants in common.

On appeal, Sanchez argues the trial court abused its discretion in characterizing the properties as the separate property of the parties because there is legally and factually sufficient evidence to support the jury's findings that the properties are not community property and that the properties were not fraudulently transferred to Sanchez's adult son who paid for the properties with his funds. She argues the trial court lacked authority to disregard the jury's findings and make its own findings with respect to the characterization of the properties and further that the evidence is legally and factually insufficient to support the trial court's finding that the properties are the separate property of the parties.

We reverse and render.

## Background

Sanchez and Hernandez married on December 21, 2000. Sanchez and Hernandez owned a residential property located on Wallisville Road in Houston, Texas. It is undisputed that this residential property is community property.

Sanchez had two children prior to her marriage to Hernandez. While still married to Hernandez, Sanchez helped her son—Marcos Antonio ("Antonio")—start a bail bond business. To obtain the two years of experience necessary to secure a bail bond license, Sanchez started working at a bail bond business during the "graveyard [shift] from 12:00 to 8:00 in the morning" and doing "hot shot loads until 5:00 in the evening." After working at the bail bond company for two years, Sanchez was able to secure a license for Antonio to open a bail bond business. Antonio and Sanchez agreed that the license would initially be in Sanchez's name because Antonio was not yet a U.S. citizen and citizenship is required to obtain a bail bond license.

When Antonio and Sanchez first started the bail bond business, Antonio was able to secure underwriting for the business, but only for $35,000, which made it difficult. Antonio explained that most bonds "go from like 50 and up" and for those bonds, Antonio had to secure approval from the underwriter to finance the bond, which often required collateral and "not every[one] has collateral." To overcome this limitation, Antonio began purchasing properties to use them as collateral for bonds. From 2012 through 2021, Antonio was able to purchase a total of twenty-three properties for his bail bond business. ("Properties"). Antonio testified that he used his funds to purchase the Properties, but because he was not a U.S. citizen at the time of purchases, he and his mother agreed that the deeds

would be in her name, and in Hernandez's name, until Antonio secured his U.S. citizenship.[1] Sanchez testified that although the deeds to the Properties were in her name and Hernandez's name, Antonio purchased the Properties "with his own funds" and neither she nor Hernandez "paid any monies for the purchase" of the bail bond Properties.

In June 2021, after Antonio became a U.S. citizen, Sanchez and Hernandez transferred the Properties to Antonio "as agreed." The special warranty deeds were signed before a notary public and they reflect signatures from Sanchez and Hernandez. According to Sanchez, there was no separate property purchased or owned by her or Hernandez and the only property she and Hernandez owned together was their residence in Houston, Texas.

Sanchez filed for divorce in November 2021. Hernandez filed a counter-petition for divorce asserting claims against Sanchez and her two adult children for fraud, theft, and conspiracy to commit theft involving the transfer of the Properties to Antonio. Hernandez alleged that the bail bond Properties were "community property," that he owned a community property interest in some, or all, of the

---

[1] Sanchez testified that the license was in her name because Antonio, although a legal U.S. resident, was not yet a U.S. citizen. According to Antonio, the bail bond commission requires that owners of bail bond companies be U.S. citizens. Sanchez testified that the bail bond properties were purchased in her name "[b]ecause the license was under my name, and the insurance required for me to be, you know, in the paperwork." Antonio testified that Hernandez did not help start the bail bond company.

Properties, and that Sanchez and Antonio had conspired to transfer the Properties fraudulently into Antonio's name "without just cause, without [Hernandez's] permission, [and] without adequate consideration" in an effort to defraud the community estate. Hernandez also alleged that Sanchez's other adult child—a public notary—had conspired with Sanchez and Antonio by notarizing the special warranty deeds that transferred the Properties to Antonio.[2] The trial court dismissed Hernandez's fraud, theft, and conspiracy claims against Antonio and his sibling before the trial commenced.

Sanchez testified during trial that Antonio owned the Properties. After he became a U.S. citizen, the Properties were transferred to Antonio as agreed. Antonio testified that he purchased the bail bond Properties with his funds and he did not receive money from Sanchez or Hernandez to help purchase the Properties. He testified that "it was understood from the beginning that [the Properties] were mine." As agreed, after he became a U.S. citizen, the Properties were transferred to him. He testified that the Properties "were transferred back to me because those were my properties. I purchased those properties . . . . I had got my citizenship. I was able to apply for my own bail bond license."

---

[2] Although the special warranty deeds bear Hernandez's signature, Hernandez claimed he had not appeared before Sanchez's other child—the notary public. He claimed the notarization on the deeds was fraudulent and that the signatures on the deeds were not his.

Hernandez appeared at trial *pro se*. During cross-examination, he conceded that Antonio started the bail bond business and that initially, the license for the business was secured in Sanchez's name because Antonio was not yet a U.S. citizen. Hernadez testified that he was a truck driver and that at some point, he also worked at the bail bond company. When asked about the purchase of the bail bond Properties, Hernandez stated that the Properties had come "out of the bail bonds." He then testified, without much elaboration, that the Properties were purchased with money out of his joint account with Sanchez. When pressed for more information, Hernandez testified he did know how much money was spent to purchase the Properties, he did not handle the money, and he was not "aware of any monies [Sanchez had] used from [his] income to purchase the [P]roperties." Hernandez also testified he had no proof he paid for the Properties:

Q:   But it is true that you didn't pay—you don't recall paying any money for those properties that were used for the bail bond company.  Is that correct?

A:   But I was working there.

Q:   So if your stepson Marcos Antonio testified that he paid for all of those properties from his own funds, would you agree with him?

A:   I need proof.

. . .

Q:   Do you have any proof that you paid for the properties?

6

A:     I don't have proof.

After a two-day trial, the jury found that:

- The parties' homestead property in Houston, Texas was community property;

- Twenty-six[3] properties used as collateral for the bail bond company were not community property;

- Sanchez did not commit fraud with respect to the community property rights of Hernandez; and

- The transfer [of the properties] made by Sanchez to Antonio was fair and did not constitute constructive fraud against the community estate.

After the trial court polled the jury, the parties accepted the verdict and the trial court excused the jury. At a subsequent "post-jury trial conference," the trial court, on its own motion and without prior notice to the parties, *sua sponte* set aside the jury's verdict and granted a new trial. Sanchez sought mandamus relief in this Court arguing the trial court had abused its discretion by "unilaterally ordering a new trial" and entering a "one-page order [that] [was] facially invalid." *See In re Sanchez*, No. 01-23-00309-CV, 2024 WL 2061673, at *1 (Tex. App.—Houston [1st Dist.] May 9, 2024, orig. proceeding) (mem. op.). We conditionally granted

---

3       Sanchez argues on appeal that the final judgment "erroneously and arbitrarily characterized an additional property owned by Antonio and two other entities and identified them as the separate property of Sanchez and Hernandez." Those three properties were identified with the other bail bond Properties in the jury charge.

7

Sanchez's petition directing the trial court to vacate her order for new trial.[4]  *Id.* at *6.

Soon thereafter, the trial court vacated the challenged order setting aside the jury's verdict and ordering a new trial. The trial court then held a conference, during which the trial court judge, without notice to or prompting from the parties, stated:

> We had a jury trial on January 9th, 2023 and January 10th, 2023. And based on that jury charge and other issues, the Court has to set aside that jury verdict and grant a new trial. And the reasons that I'll have to set that verdict in the trial is the jury charge itself was inadequate in that it did not actually characterize the property. And that's—the issue before the jury was the characterization of the property. They just— their answer said what the property was not. It did not give the Court an option of what the property was. It also did not set out definitions for important terms like separate property[5] and the burden that each party would have to meet in order to—for property to be confirmed as separate property.
>
> . . .

---

[4]  We declined to direct the trial court to enter final judgment on the jury's findings because the basis for the trial court's order setting aside the jury's verdict and ordering a new trial was unclear, and we thus could not determine whether Sanchez was entitled to that relief. *In re Sanchez*, No. 01-23-00309-CV, 2024 WL 2061673, at *6 (Tex. App.—Houston [1st Dist.] May 9, 2024, orig. proceeding) (mem. op.).

[5]  The charge defined separate and community property in the definition section of the charge, and it repeated the concepts of separate and community property in Instruction No. 2 preceding Questions No. 2 and 3, which asked whether the parties' homestead (Question 2) and the bail bond Properties (Question 3) were the community property of Sanchez and Hernandez.

And there were—there were some exhibits that [were] provided by [Sanchez's counsel][6] in a binder, but those exhibits were not admitted. Mr. Hernandez stated that he was not opposed to them, but [Sanchez's counsel] said, wait, they're not all going to be admitted. So because they weren't admitted, I couldn't even consider looking at any of them. The inventory and appraisement were not admitted, and so I could not look at an inventory—I could [sic] look at any documents that had not been admitted into evidence.

And since this was a case where it involved a lot of real property, there were no—there were some deeds submitted that supported the inception of title, but property, we all know that—with the statute of frauds that anything dealing with land has to be in writing. Those were not admitted to the Court either.

So you all have an option of—if Mr. Hernandez wants to go through the procedure of another jury trial, he has the right to do that. And we'll have to set you up a time to—y'all pick another jury. Or if he waives, he can waive for a bench trial. But we need to make sure that we have everything in order the next time we go.

Sanchez objected to the trial court's directive that a new trial be conducted. Hernandez stated that he wanted a new trial. The trial court then stated that it would make "a just and right determination of the property that the Court heard evidence on."

No new trial was conducted either to the jury or to the bench. Rather, more than a year later, the trial court issued a final decree of divorce reflecting the jury's finding that the parties' residence in Houston was community property and

---

[6]   Ten special warranty deeds transferring property to Antonio, all of which were apparently attached to Hernandez's counter petition for divorce, were entered into evidence as exhibits 8-17. The exhibits are not in the appellate record, although there are ten special warranty deeds conveying bail bond properties to Antonio attached to Hernandez's counter-petition.

awarding a fifty percent interest in the residence to each spouse. With respect to the bail bond Properties, the court confirmed the jury had found that the Properties were not community property and it declared that the Properties were the separate property of Hernandez and Sanchez "with each party respectively owning a fifty percent interest as tenants in common" in the bail bond Properties.[7]

On appeal, Sanchez challenges the trial court's final judgment declaring the Properties as the separate property of the parties.

## Applicable Law

Community property consists of all property, other than separate property, acquired by either spouse during marriage. TEX. FAM. CODE § 3.002. Separate property is property owned or claimed by a spouse before marriage or acquired during marriage by gift, devise, or descent. *Id.* § 3.001. A spouse advancing a claim of separate property has the burden to establish by clear and convincing evidence that the property is separate. *Id.* § 3.003(b); *see Cockerham v. Cockherham*, 527 S.W.2d 162, 167 (1975) (holding that "party asserting separate ownership must clearly trace the original separate property into the particular assets on hand during the marriage"); *see also Massey v. Massey*, 807 S.W.2d 391, 405 (Tex. App.—Houston [1st Dist.] 1991, writ denied) ("In order to overcome the

---

[7] Sanchez filed a motion to modify the final judgment, arguing that trial court had erroneously listed the Properties as the "separate property" of the parties. The motion was denied.

[community property] presumption, the party claiming separate property must show by clear and convincing evidence that the property is, in fact, separate.").

A jury's finding as to the character of property—whether it is community or separate—is binding on the trial court and the trial court may not disregard the finding. Although a trial court is vested with wide discretion and authority in dividing marital property and may even disregard advisory jury findings regarding division, a court may not ignore jury findings "which extend to issues of fact from which the status of property is determined." *Cockerham*, 527 S.W.2d at 173 (citations omitted). The Texas Supreme Court made this clear in *Cockerham*, where the Court held that "[t]he action of the trial court in disregarding the jury's answer regarding the status of the property was error." *Id*.

A trial court is thus bound by jury findings on the factual question of whether property is community or separate. *Id*. And equally relevant to our analysis, a trial court is bound by a jury's finding that a transfer of property from a spouse to a third party is not a fraudulent transfer. *See id*. (holding trial court erred in awarding husband interest in certain property because jury had already determined wife had not fraudulently gifted such property to third party and thus "there was no basis for the award to the husband").

Separately, when a trial court "sua sponte disregards a [jury's] finding, the court's action may be upheld only where the disregarded finding is immaterial."

*United Servs. Auto. Ass'n v. Hayes*, 507 S.W.3d 263, 288 (Tex. App.—Houston [1st Dist.] 2016), pet. granted, judgm't vacated w.r.m.) (quoting *Harris Cty. v. Gibbons*, 150 S.W.3d 877, 885 (Tex. App.–Houston [14th Dist.] 2004, no pet.)); *see St. Paul Fire & Marine Ins. Co. v. Bjornson*, 831 S.W.2d 366, 369 (Tex. App.—Tyler 1992, no writ) ("[W]here the trial court, *sua sponte,* disregards jury findings . . . such action can be upheld only where the disregarded findings are in regard to immaterial issues.") (citations omitted). A jury finding is immaterial "when the trial court should not have submitted the question to the jury and the jury's finding does not apply to the case." *Hayes*, 507 S.W.3d at 288 (citing *Brown v. Armstrong*, 713 S.W.2d 725, 728 (Tex. App.–Houston [14th Dist.] 1986, writ ref'd n.r.e.)). A trial court may also disregard a jury finding when other jury findings render it immaterial. *Id.* (citing *C. & R. Transp., Inc. v. Campbell*, 406 S.W.2d 191, 195 (Tex. 1966); *Watson v. Nortex Wholesale Nursery, Inc.*, 830 S.W.2d 747, 750 (Tex. App.–Tyler 1992, writ denied)). If the trial court improperly disregards a jury's findings, the court commits reversible error. *See generally Hall v. Hubco, Inc.*, 292 S.W.3d 22, 34 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *Gibbons*, 150 S.W.3d at 885.[8]

---

[8] *See also Gilbreath v. Horan*, 682 S.W.3d 454, 555 (Tex. App.—Houston [1st Dist.] 2023, pet. denied) ("A trial court is not at liberty to disregard a jury's answers to material issues."); *Harris Cty. v. Garza*, 971 S.W.2d 733, 735 (Tex. App.—Houston [14th Dist.] 1998, no pet.) ("The judge may not disregard [the jury's] answers to material issues, set aside findings and make contrary ones, hear

12

## Analysis

After a two-day trial, the jury rendered a verdict finding that the parties' residence in Houston was the only community property of the estate. As to the bail bond Properties, the jury found that the Properties were not community property and further that Sanchez had not committed fraud[9] with respect to Hernandez's community property rights by transferring the Properties to her son Antonio, finding that the transfers were "fair."[10]

Although the jury was asked to determine whether the bail bond Properties were community property, they were not asked to determine whether they were separate property of the spouses. Because this question was not presented to the jury, the trial court apparently believed there was error in the jury charge. No one

---

additional evidence and make supplementary findings on material issues, or select from conflicting findings those which he approves.") (citing *Highlands Ins. Co. v. Baugh*, 605 S.W.2d 314, 319 (Tex. Civ. App.—Eastland 1980, no writ)).

[9] The jury was instructed that a spouse commits fraud

> if *that spouse transfers community property or expends community funds for the primary purpose of depriving the other spouse of the use and enjoyment of the assets involved in the transaction.* Such fraud involves dishonesty or purpose to deceive.

(Emphasis in original.)

[10] The jury was instructed that a "gift, transfer, or expenditure of community property that is capricious, excessive, or arbitrary is unfair to the other spouse." Factors to be considered in determining the fairness of a transfer are (1) the relationship between the spouse making the transfer and the recipient; (2) whether special circumstances tended to justify the transfer; and (3) whether the community funds used for the transfer were reasonable in proportion to the community estate remaining.

objected to the charge or moved for a new trial on this basis. During a conference following this Court's order conditionally granting Sanchez's petition for writ of mandamus, however, the trial court stated that "the jury charge itself was inadequate in that it did not actually characterize the property. And that's—the issue before the jury was the characterization of the property. They just—their answer said what the property was not. It did not give the Court an option of what the property was." But under the circumstances and the evidence presented, that was not a necessary finding. The only claims advanced by Hernandez were his claim that the Properties were community property because the Properties had been purchased with funds from his joint account with Sanchez and his claim that the transfer of the Properties from Sanchez to her son was a fraud on the marital estate. The jury rejected both claims finding that the Properties were not community property, that Sanchez had not committed fraud on the community estate, and that the transfer of the Properties to Antonio was "fair." Those findings are supported by legally and factually sufficient evidence.

The jury heard evidence that Antonio paid for the Properties with his funds, that he did not use Sanchez's or Hernandez's funds for the Properties, that while the Properties were initially Sanchez's and Hernandez's names, both understood and agreed that the Properties were Antonio's properties and would be transferred to him when he became a U.S. citizen, and that Sanchez and Hernandez both

14

signed the deeds transferring the Properties before a notary public. Although Hernandez testified that joint funds were used to purchase the Properties and that he had not consented to the transfers, he provided no evidence that community funds were used to purchase the Properties, and even if he had, the jury, as the sole finder of fact, was at liberty to disregard his testimony and believe the testimony of Antonio and Sanchez that the Properties were purchased by Antonio with his separate funds and were his property. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005) ("Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony.").

The jury's findings that (1) the Properties were not community property, (2) the transfer of the Properties to Antonio did not constitute fraud, and (3) the transfer was fair are thus supported by legally and factually sufficient evidence. It was an abuse of discretion for the trial court to disregard the jury's findings and to declare, without conducting a new trial on the matter, that the Properties were the separate property of Sanchez and Hernandez with each owning a fifty percent interest in the Properties as tenants in common, and further to include them in the divorce decree's property division. "Though the trial court has wide discretion in dividing the property of the spouses as its feels just and in disregarding advisory findings of the jury, it may not ignore the jury's answers which extend to issues of

fact from which the status of property is determined." *Cockerham*, 527 S.W.2d at 173 (citing *Stafford v. Stafford*, 41 Tex. 111 (1874)).

In *Cockerham*, as in this case, the jury determined that the wife had not fraudulently conveyed community property to a third party. 527 S.W.2d at 164, 173. The trial court disregarded the jury's finding, concluding the wife "had fraudulently taken community property and made gifts" to the third party, and based on that finding, it awarded the husband a fifty percent interest in the transferred property. *Id.* at 166, 173. On appeal, the court of appeals recognized that while the testimony "was sharply conflicting on this issue and there was certainly at least some evidence to support the jury's answer," the trial court nonetheless "had the power to disregard the jury's answer because answers of the jury regarding disposition of property are advisory only." *Id.* at 173. The Texas Supreme Court disagreed, holding that the trial court's disregarding the jury's answer regarding the property's status was error. *Id.*

Other courts also have held that while a trial court may disregard a jury's finding as to the division of property, it may not disregard the jury's findings as to the characterization of property. *See Nieto v. Nieto*, No. 04-11-00807-CV, 2013 WL 1850780, at *13 (Tex. App.—San Antonio May 1, 2013, pet. denied) (mem. op.) ("In making a division, the trial court may disregard a jury's suggestion as to the division of the property, but [it] may not disregard the jury's findings as to the

status or characterization of the property[.]") (citing *Cockerham*, 527 S.W.3d at 173). Simply put, "a trial court may not ignore jury findings which extend to issues of fact from which the status of property is determined[.]" *In re Marriage of Moore*, 890 S.W.2d 821, 838 (Tex. App.—Amarillo 1994, no writ). Because the trial court did so in this case, entering a final decree declaring that the bail bond Properties are the separate property of the parties, in contravention of the jury's finding that the Properties are not community property and were not fraudulently transferred to Antonio who now owns them, the trial court abused its discretion.

The parties requested a jury trial to determine the character of the parties' homestead and the bail bond Properties, and the record does not reflect that either party waived that right. The trial court was thus not at liberty to make that factual determination nor was there any evidence supporting the trial court's holding that the bail bond Properties were the separate property of the parties.[11] *See In re*

---

[11] It is unclear whether the trial court granted a new trial after this Court conditionally granted Sanchez's petition for mandamus. While the trial court initially stated that Hernandez was entitled to a new trial and that "we need to make sure that we have everything in order the next time we go," when the court entered final judgment a year later, the court stated in the judgment that a jury trial had been conducted and the judgment reflects the findings of the jury. It thus appears that court did not grant a new trial. To the extent the court did so, the trial court abused its discretion by entering judgment without conducting a new trial. *See Wichita Falls Traction Co. v. Cook*, 122 Tex. 446, 60 S.W.2d 764, 768 (1933) (orig. proceeding) ("[T]he setting aside of the judgment, rendered upon the verdict of the jury, was tantamount to granting a new trial, and another judgment could not be entered without another trial.") (citation omitted); *Pinkley v. Vega*, 768 S.W.2d 473, 475 (Tex. App.—El Paso 1989, no writ) (observing that because trial court granted motion for new trial, "another judgment could not properly be

17

*Marriage of Leeson¸* No. 13-23-00158-CV, 2025 WL 555766 at \*5, 7 (Tex. App.—Corpus Christi Feb. 20, 2025, no pet.) (mem. op.) (holding trial court abused its discretion in denying husband's request for jury trial because if jury had believed husband's claim that tract of land was his separate property, trial court would have been forbidden from awarding tract to wife). Antonio testified that he purchased and owned the bail bond Properties. And Sanchez testified that she did not purchase or own the Properties but had legally transferred title of the Properties to Antonio—a non-party—once he became a U.S. citizen. There was no evidence presented at trial that Sanchez or Hernandez had any ownership interest in the Properties, that community funds were used to purchase the Properties, or that the Properties were the separate property of Sanchez or Hernandez. The trial court thus abused its discretion in characterizing the bail bond Properties as the separate property of the parties in the final judgment. *See Sloan v. Sloan*, 683 S.W.2d 751, 752–53 (Tex. App.—Houston [14th Dist.] 1984, no writ) (holding that district court could not divest third person of her legal interest in property, reversing trial

entered without a trial.") (citation omitted); *cf. Otis Elevator Co. v. Bond,* 373 S.W.2d 518, 523 (Tex. App.—Dallas 1963), *rev'd on other grounds*, 388 S.W.2d 681 (Tex. 1965) ("Having decided to disregard the jury's answer to the only issue submitted on negligence of the Building, the court below should have granted a new trial. He had no authority to substitute his own finding in that respect for that of the jury."); *Wilkins v. Methodist Health Care Sys.*, 160 S.W.3d 559, 563 (Tex. 2005) ("[W]hen the trial court grants a motion for new trial, the court essentially wipes the slate clean and starts over.").

court and rendering judgment that certain property was not community property and that spouses take nothing as to that property).

## Conclusion

We reverse and vacate that portion of the trial court's final decree of divorce declaring that the Properties are Sanchez's and Hernandez's separate property and awarding each a fifty percent interest in the Properties as tenants in common, and render judgment that the Properties are not community property, that they were not fraudulently transferred to Sanchez's adult son, and that Sanchez and Hernandez take nothing as to the Properties. We affirm the final decree of divorce in all other respects.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.